SCOTT J. SAGARIA (BAR # 217981)
sjsagaria@sagarialaw.com
ELLIOT W. GALE (BAR #263326)
egale@sagarialaw.com
JOE B. ANGELO (BAR #268542)
jangelo@sagarialaw.com
SCOTT M. JOHNSON (BAR #287182)
sjohnson@sagarialaw.com
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 200
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff
Christopher Gillham

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| **CHRISTOPHER GILLHAM,** | CASE NO. |
| Plaintiff, | COMPLAINT FOR DAMAGES: |
| v. | 1. Violation of Fair Credit Reporting Act; |
| Equifax, Inc.; Columbia Collection Service, Inc., Professional Credit Service and DOES 1 through 100 inclusive**,** | |
| Defendants. | |

COMES NOW Plaintiff **CHRISTOPHER GILLHAM**, an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b)). Plaintiff seeks redress for the unlawful and deceptive practices committed

     by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt included in Plaintiff's Chapter 13 bankruptcy.

2. Here Defendant Columbia Collection Service, Inc. (hereinafter "Columbia") is reporting Plaintiff's account as unpaid instead of included in bankruptcy.

3. Defendant Professional Credit Service (hereinafter "Professional") is reporting Plaintiff's account as unpaid instead of included in bankruptcy.

4. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

5. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

6. The *majority* of consumer Debtors who file consumer bankruptcy do so to *raise* their FICO Score and remedy their poor credit worthiness.

7. It is entirely possible for consumer Debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

8. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

9. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

10. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

11. These credit reporting issues are most prevalent in Chapter 13 bankruptcy filings.

12. Consequently, in the United States today it is objectively worse for consumers' credit worthiness to file Chapter 13 and pay back some or all of their debt, as opposed to filing Chapter 7 liquidation where Creditors generally receive nothing.

13. This was not the intent of Congress when enacting the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

14. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

15. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

16. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

17. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 13 bankruptcy filing.

18. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

19. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

20. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

21. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

22. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

23. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.
24. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.
25. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
26. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
27. There are 28 FICO Scores that are commonly used by lenders.
28. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
29. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
30. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
31. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.
32. Each of the five factors is weighted differently by FICO.
33. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
34. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

35. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
36. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.
37. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.
38. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**Metro 2**

39. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
40. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
41. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
42. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
43. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.

  e. The CDIA offers a COLUMBIA 2 Learning system to provide detailed instructions on the use of COLUMBIA 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

  f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

  g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

44. The CDIA's Metro 2 is accepted by all CRAs.

45. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

46. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

47. The three main credit bureaus helped draft the CRRG.

48. The CRRG is not readily available to the public. It can be purchased online for $229.45.

49. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

50. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

51. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

52. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

53. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

54. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
55. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

56. When a consumer files bankruptcy certain credit reporting industry standards exist.
57. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.
58. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.
59. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.
60. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.
61. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.
62. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.
63. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.
64. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.
65. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.
66. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.
67. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

68. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.
69. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.
70. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.
71. The ten-year rule for reporting runs from the date the bankruptcy was *filed.*
72. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.
73. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.
74. Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

### Plaintiffs Bankruptcy Filing

75. Plaintiff filed for Chapter 13 bankruptcy protection on October 27, 2015 in order to reorganize and repair Plaintiff's credit worthiness and FICO Score.
76. Plaintiff's chapter 13 plan of financial reorganization was confirmed by the U.S. Bankruptcy Court on January 21, 2016.
77. On November 20, 2016 Plaintiff ordered a three bureau credit report from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure proper reporting by Plaintiff's Creditors.
78. Plaintiff noticed several different trade lines on the November 20, 2016 credit report all reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.
79. One account with COLUMBIA, continued to report the account as unpaid and in collection without referencing Plaintiff's bankruptcy filing.
80. Another account with Professional, continued to report the account as unpaid and in collection without referencing Plaintiff's bankruptcy filing

81. In response, Plaintiff disputed the inaccurate tradelines including the COLUMBIA and Professional trade lines via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on November 15, 2017.
82. Plaintiff's dispute letter specifically put defendant COLUMBIA and Professional on notice that Plaintiff had filed for bankruptcy and that the accounts should be updated to reflect the bankruptcy filing.
83. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.
84. On December 22, 2017 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second three bureau credit report from Equifax, Inc. for the sole purpose to ensure Plaintiff's accounts had in fact been updated.
85. The accounts listed above had not been updated.

### Inaccuracy – COLUMBIA

86. Plaintiff was frustrated to see that Defendant COLUMBIA did not properly update the accounts but instead was reporting Plaintiff's account as unpaid, despite confirmation of Plaintiff's chapter 13 plan
87. Plaintiff specifically listed the COLUMBIA account in his initial chapter 13 filing and believes that the Bankruptcy Notification Center sent notice of the filing to COLUMBIA shortly after the chapter 13 was filed.
88. COLUMBIA also received notice of Plaintiff's chapter 13 plan confirmation.
89. Despite receiving notice of the filing COLUMBIA did not update Plaintiff's credit report to indicate that the account was included in bankruptcy and instead continued to report on Plaintiff's credit as if no bankruptcy was filed.

### Willfulness

90. This was not a negligent act by Defendant COLUMBIA but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.

91. COLUMBIA is not following industry standards and is not listing the correct consumer information indicator (CII) as the CII should have been updated to D as Plaintiff's bankruptcy is confirmed.

92. By indicating that the account status as and unpaid without noting the chapter 13 bankruptcy filing it appears that Plaintiff has failed to address this outstanding debt thus making Plaintiff less credit worthy.

93. COLUMBIA's reporting makes Plaintiff appear less credit worthy because, if the CII D were reported the collection and unpaid notation would be replaced with a status notation of included in bankruptcy.

94. Such a notation alerts lenders that Plaintiff's debt with COLUMBIA has been included in Plaintiff's bankruptcy.

95. Once COLUMBIA received Plaintiff's dispute rather than acknowledge the bankruptcy COLUMBIA noted the account as unpaid with absolutely no indication whatsoever that Plaintiff had included the debt in his Chapter 13.

96. Rather than mark the account as included in bankruptcy COLUMBIA continues to report the account delinquent i.e. unpaid with the hope that Plaintiff will pay the account at some point in the future.

97. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Inaccuracy – Professional**

98. Plaintiff was frustrated to see that Defendant Professional did not properly update the accounts but instead was reporting Plaintiff's account as unpaid, despite confirmation of Plaintiff's chapter 13 plan of financial reorganization.

99. Plaintiff specifically listed the Professional account in his initial chapter 13 filing and believes that the Bankruptcy Notification Center sent notice of the filing to Professional shortly after the chapter 13 was filed.

100. Professional also received notice of Plaintiff's chapter 13 confirmation.

101. Despite receiving notice of the filing Professional did not update Plaintiff's credit report to indicate that the account was included in bankruptcy and instead continued to report on Plaintiff's credit as if no bankruptcy was filed.

**Willfulness**

102. This was not a negligent act by Defendant Professional but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.

103. Professional is not following industry standards and is not listing the correct consumer information indicator (CII) as the CII should have been updated to D as Plaintiff's bankruptcy has been filed and confirmed.

104. By indicating that the account status as unpaid without noting the chapter 13 bankruptcy filing it appears that Plaintiff has failed to address this outstanding debt thus making Plaintiff less credit worthy.

105. Professional's reporting makes Plaintiff appear less credit worthy because, if the CII D were reported and unpaid notation would be replaced with a status notation of included in bankruptcy.

106. Such a notation alerts lenders that Plaintiff's debt with Professional has been included in Plaintiff's bankruptcy..

107. Once Professional received Plaintiff's dispute rather than acknowledge the bankruptcy Professional noted the account as unpaid with absolutely no indication whatsoever that Plaintiff had included the debt in his Chapter 13.

108. Rather than mark the account as included in bankruptcy Professional continues to report the account delinquent i.e. unpaid with the hope that Plaintiff will pay the account at some point in the future.

109. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Damages**

110. Here, Plaintiff pulled the credit report at issue at a cost of $39.95, specifically for the sole purpose of verifying that the inaccuracies were fixed.

111. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code.

112. Plaintiff is frustrated and annoyed that he has not been able to obtain credit as a result of the information listed on his credit report.

113. Plaintiff has become anxious and stressed out regarding his low credit score.

114. His fiancé filed for bankruptcy at approximately the same time as Plaintiff and her score has improved drastically while his remains low; Plaintiff fears that he will not be able to raise his score because the disputes that he sent out did not improve his credit and the accounts with Columbia and Professional do not reflect the bankruptcy filing.

115. The actions of Equifax, Inc., COLUMBIA and Professional as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Assure Credit Reporting Accuracy.**

116. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

117. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

118. Had Equifax maintained reasonable procedures to assure maximum accuracy Equifax would never have allowed Defendant COLUMBIA and Professional to report the account as described herein.

119. As a result of Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

120. The violations described herein by Equifax was willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.
121. Equifax intentionally sends consumer disputes to employees who do not live within the continental United States.
122. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.
123. These employees for Defendants Equifax receive little to know training concerning how to accurately report consumer debt.
124. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)
125. Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.
126. Equifax has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.
127. Equifax also allowed both Data furnishers to report these accounts post chapter 13 confirmation with actual knowledge of the bankruptcy filing.
128. Equifax knew plaintiff filed bankruptcy and yet somehow allowed these data furnishers to reports inaccurately and obviously outside of recognized industry standards.
129. Given that Equifax helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Equifax knew that these accounts were not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.
130. Consequently, Defendants Equifax is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

131. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**Columbia and Professional – Failure to Reinvestigate.**

132. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

133. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

134. Defendant COLUMBIA and Professional violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

135. The CRAs provided notice to Columbia and Professional that Plaintiff was disputing the inaccurate and misleading information but Columbia and Professional failed to conduct a reasonable investigation of the information as required by Columbia and Professional.

136. Based on Plaintiff's dispute, Columbia and Professional should have known its accounts were included in Plaintiff's Chapter 13 plan of reorganization.

137. The most basic investigation would include a simple review of well-established credit reporting industry standards.

138. Plaintiff alleges Columbia and Professional did not review well established industry standards for credit reporting.

139. If Columbia and Professional had reviewed such standards Columbia and Professional would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

140. Such an investigation would be reasonable.

141. Plaintiff also alleges that Columbia and Professional did not investigate whether Plaintiff filed for bankruptcy, whether its accounts were included, the terms of the plan, or whether or not the terms had been approved.
142. The lack of investigation is unreasonable.
143. Plaintiff further alleges that Columbia and Professional have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Equifax, Inc. – Failure to Reinvestigate Disputed Information.**

144. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
145. After Plaintiff disputed the accounts mentioned above, Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.
146. Equifax failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
147. Plaintiff alleges that Equifax has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
148. Equifax is not a passive entity bound to report whatever information a DF provides.
149. Plaintiff alleges that Equifax is readily familiar with Metro 2 guidelines and credit reporting industry standards given that Equifax helped draft said guidelines.
150. In fact, Equifax sponsors and authorizes workshops hosted by the CDIA that teach the following to DFs:
    a. Do not report delinquencies post petition pre discharge in the payment history section regardless of Chapter 7 or Chapter 13. Instead report the Metro 2 indicator D.
    b. In Chapter 13 cases do not report past due balances post confirmation.
    c. In Chapter 13 cases do not report balances that are inconsistent with the terms of the Chapter 13 plan.
    d. In Chapter 13 cases do not report monthly payments that are inconsistent with the terms of the Chapter 13 plan.

e. The above reporting is the correct and accurate way to report debts included in consumer bankruptcy filings.

151. Given the aforementioned, Plaintiff alleges that Equifax can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

152. Equifax can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

153. Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.

154. Equifax would have known that Plaintiff filed for Chapter 13 based on multiple other accounts reporting as much.

155. Equifax would have known that Plaintiff's plan had been confirmed based on multiple other accounts reporting as much.

156. Equifax would have known that failure to report a CII given that a Chapter 13 was filed did not comply with industry standards.

157. In fact Equifax knew plaintiff filed for chapter 13 bankruptcy because its own public records section reflects that Plaintiff filed bankruptcy.

158. Equifax therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

159. Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Equifax general policy is to simply parrot whatever information a data furnishers sends.

160. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

**THIRD CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Review and Consider All Relevant Information.**

161. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

162. Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

163. As a result of Equifax violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to , damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

164. The violations by Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

165. In the alternative, Equifax was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

166. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**FOURTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Delete Disputed and Inaccurate Information.**

167. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

168. Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

169. As a result of Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

170. The violations by Equifax was willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

171. In the alternative, Equifax was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

172. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: February 27, 2018

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: February 27, 2018

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff